## No. 79SA266

## The People of the State of Colorado v. Cornelius Lane Scott

(615 P.2d 680)

Decided August 18, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Nathan B. Coats, Assistant Attorney General, Litigation Section, for plaintiff-appellee.

Bruce P. Fierst, for defendant-appellant.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

Cornelius Lane Scott, appellant, appeals from his conviction of Driving After Judgment Prohibited, section 42-2-206, C.R.S. 1973. We affirm the judgment and remand for reconsideration of the sentence.

On April 7, 1977, Scott was charged with Driving While License Revoked, in violation of section 42-2-130, C.R.S. 1973 (now in 1979 Supp.). On May 27, 1977, he appeared, pro se, and tendered a plea of not guilty to the charge. A pretrial conference was held on July 14, 1977, and the case was then set for trial to the court on September 19, 1977.

On September 19, Scott appeared with counsel and tendered a plea of guilty to the charge. On that same date, it had been brought to the attention of the district attorney that Scott had been adjudicated a habitual traffic offender in December of 1976. Based on that information, and before the court ruled on Scott's plea of guilty, the People moved to dismiss

the charge of Driving While License Revoked. The motion was granted.[1]

On October 20, 1977, Scott was charged with the felony of Driving After Judgment Prohibited, section 42-2-206, as well as with the misdemeanor Driving While License Revoked. Because an incorrect address was listed for Scott, he was not notified of the new charge against him until January 1978. On April 4, 1978, he filed a motion to dismiss both charges, alleging violation of his right to a speedy trial and of his right to have all charges arising out of a single incident brought at the same time. The motion was denied, and the case was bound over to the district court.

On April 24, 1978, Scott filed a further motion to dismiss on the grounds that he had been denied a speedy trial and the court lacked jurisdiction to proceed against him. The court also denied that motion.

Trial to the court was held on October 5, 1978. Scott was convicted of Driving After Judgment Prohibited. The court dismissed the charge of Driving While License Revoked. At the sentencing hearing, the court denied Scott's motion to declare section 42-2-206 unconstitutional, and sentenced him to an indeterminate period not to exceed five years. The court also ruled that Scott was not eligible for a community correction program.

I.

Scott first contends that the district court erred in denying his motion to dismiss pursuant to Crim. P. 48(b) and section 18-1-408(2), C.R.S. 1973 (1978 Repl. Vol. 8). We do not agree.

Both Crim. P. 48(b) and section 18-1-405(1), C.R.S. 1973 (1978 Repl. Vol. 8) require that a defendant be brought to trial "on the issues raised by the complaint" within six months after a plea of not guilty. In this case, Scott was brought to trial within six months of his plea of not guilty to the charge of Driving After Judgment Prohibited, but not within six months of his not guilty plea to the charge of Driving While License Revoked. The question before us is whether the six-month speedy trial period began to run after the not guilty plea to the Driving While License Revoked charge, or after the not guilty plea to the Driving After Judgment Prohibited charge.

In *Amon v. People,* 198 Colo. 172, 597 P.2d 569 (1979), the court set out a two-part test to be applied in determining whether the statutory right to speedy trial was violated where a complaint is amended after the defendant has entered a plea of not guilty to the original charge. The court held that it is crucial to the speedy trial issue to determine "whether the amended complaint charged any new, different, or

---

[1] Section 42-2-206(2) requires that the court, before hearing charges of Driving While License Revoked, "shall require the district attorney to determine whether such person has been determined to be an habitual offender . . . . *If the district attorney determines that the accused has been so held, he shall cause the appropriate criminal charges to be lodged against the accused.*" (Emphasis added.)

additional offense, thus requiring the entry of another plea by the defendant. If so, then the good faith of the prosecution in amending the complaint should be scrutinized to determine if there was an attempted circumvention of the speedy trial rule."

■  Applying the *Amon* test to the facts of this case, we note first that, by charging Scott with the felony offense of Driving After Judgment Prohibited, the prosecution charged a new, different, and additional offense to the original charge of Driving While License Revoked. The latter charge is a misdemeanor, requiring proof that the accused was driving while his license was revoked. The offense of Driving After Judgment Prohibited required proof that the accused was driving while his license was revoked *and* that the accused had been determined to be a habitual offender, pursuant to section 42-2-202, C.R.S. 1973. The filing of the felony charge necessitated another arraignment of Scott.

The *Amon* test also mandates that the court examine the good faith of the prosecution to determine if, by not filing the felony charge at the time the original misdemeanor charge was filed, the prosecution was attempting to circumvent the speedy trial rule as set out in Crim. P. 48(b). Scott does not allege that the district attorney acted in bad faith, nor does the record indicate that the district attorney indiscriminately dismissed and refiled the charges in order to avoid the mandate of the speedy trial rule. *See People v. Wilkinson,* 37 Colo. App. 531, 555 P.2d 1167 (1976).[2] The record does indicate that, once the district attorney became aware that Scott had been determined to be a habitual offender, the district attorney took the necessary steps to charge him with Driving After Judgment Prohibited, as required by section 42-2-202(2). We hold that Scott was not denied a speedy trial.

## II.

■  We find no merit in Scott's argument that he was entitled to a dismissal under section 18-1-408(2) and Crim. P. 8(a). Section 18-1-408(2) provides, in pertinent part:[3]

"If the several offenses are *known* to the district attorney *at the time of commencing the prosecution* . . . all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. . . ." (Emphasis added.)

Scott does not contend that the prosecution was aware that he was a habitual offender at the time that the initial charge was filed against him. The statute and Crim. P. 8(a) apply only where the prosecution is aware of other offenses at the time the original action is commenced.

---

[2] We note that Scott has not raised any argument that his constitutional right to speedy trial was violated.

[3] The provisions of Crim. P. 8(a) are to like effect.

## III.

■ Scott next argues that section 42-2-206 is unconstitutional as violative of equal protection of the law in that it has created an irrational and arbitrary classification in providing that habitual traffic offenders be subjected to mandatory sentencing, whereas other offenders whose conduct is of far greater culpability may be granted probation or be given suspended sentences. Scott concludes that this inequity of treatment of habitual traffic offenders is patently unfair and as such constitutes cruel and unusual punishment. We do not agree. It is only where "two statutes provide disparate penalties for similar criminal conduct" that equal protection guarantees are violated. *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978); *People v. Czajkowski,* 193 Colo. 352, 568 P.2d 23 (1977).

■ It is well-settled that "[t]his court cannot hold that the General Assembly has constitutionally erred in providing more severe penalties for an act which it believes to be of greater social consequence. . . . The constitution does not demand symmetry of punishment where valid classifications, based on varieties of evil, exist." *People v. Czajkowski, supra.* The habitual offenders statute is specifically intended "[t]o discourage repetition of criminal acts by individuals against the peace and dignity of this state and its political subdivisions and to imposed increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws." Section 42-2-201(1)(c), C.R.S. 1973. Thus, we hold that the classification under the habitual traffic offender statute has a rational basis and does not violate the requirement of equal protection of the law. Nor is the punishment mandated so disparate to the gravity of the offense as to constitute cruel and unusual punishment.

## IV.

■ Finally, Scott argues that the court erred in holding that it was precluded from sentencing him to a community correction program. The People concur in this argument, and we agree.

Section 17-27-105(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8) provides:
" . . . A sentencing judge is authorized to sentence a nonviolent felony offender to a residential or nonresidential community correctional facility or program . . . . Such facilities may be utilized for such persons . . . who have been sentenced, including sentences for probation."
In *People ex rel. VanMeveren v. Dist. Ct.,* 195 Colo. 65, 572 P.2d 483 (1978), this court held that, even though an individual has twice been convicted of a felony and thus is ineligible for probation, such convictions "do not foreclose a court from sentencing a defendant to a community correctional program . . . ." *Accord, People v. District Court,* 195 Colo. 34, 575 P.2d 4 (1978).

We extend the same rationale to an individual sentenced pursuant to section 42-2-206(1), which provides that "[n]o portion of [the sentence for

a class 5 felony] may be suspended, and no probation may be granted . . . ." Scott may be considered for a community correction program.

We further note that the court apparently misapprehended the statutory minimum sentence required for a class 5 felony. The court, in sentencing petitioner, indicated that it intended to impose the minimum sentence it could under the statute. It imposed an indeterminate to five-year sentence which in fact is the maximum sentence that could be imposed pursuant to section 16-11-101(1)(b), C.R.S. 1973 (1978 Repl. Vol. 8), for a class 5 felony, section 18-1-105(1), C.R.S. 1973 (1978 Repl. Vol. 8). Section 16-11-101(1)(b) provides that the authorized maximum sentence for a class 5 felony "shall be no more than the maximum sentence provided by law for violation of the statute involved and which shall be *no less than one-third of the maximum sentence* provided by law for violation of the statute involved." (Emphasis added.) Since the maximum sentence in this case is indeterminate to five years, a sentence of no less than one-third of five years, or an indeterminate to one and two-thirds years sentence would be the maximum sentence that could be imposed.

Accordingly, we affirm the judgment of the court and remand for resentencing in accordance with the views expressed herein.