## No. 79SA371

## The People of the State of Colorado v. Dewey Kenneth McKnight

(617 P.2d 1178)

Decided September 2, 1980.　　　　　　　　Rehearing denied November 3, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Nathan B. Coats, Assistant

Attorney General, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Michael Heher, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

The appellant, Dewey Kenneth McKnight, was convicted in district court of Driving After Judgment Prohibited, section 42-2-206, C.R.S. 1973. McKnight has appealed, challenging the constitutionality of the statutes upon which his conviction is based. We affirm the conviction but vacate the sentence and remand the case to the trial court for resentencing.

A brief outline of the relevant statutes will be of assistance in understanding the events in this case. The habitual traffic offender statute, sections 42-2-201 to 208, C.R.S. 1973, defines an habitual traffic offender[1] as one having a designated number of convictions for specified traffic offenses within a prescribed period of time. Section 42-2-202, C.R.S. 1973. The Colorado Department of Revenue, Motor Vehicle Division (DMV), is authorized to conduct hearings to determine whether a person is an habitual traffic offender and to revoke the driver's license of an habitual traffic offender for a period of five years. Sections 42-2-203 and 205, C.R.S. 1973. Anyone who operates a motor vehicle in Colorado while his driver's license is under revocation by reason of his status as an habitual traffic offender is guilty of Driving After Judgment Prohibited, a class 5 felony. Section 42-2-206, C.R.S. 1973. In sentencing for that crime, probation and suspension of sentence are prohibited unless the defendant establishes that he had to drive because of an emergency. *Id.*

On August 11, 1977, a state patrolman noticed that an automobile driven by the appellant had an expired state inspection sticker, and stopped the vehicle. When the appellant could not produce a driver's license, the patrolman investigated and discovered that the appellant's driver's license had been revoked because he had been found to be an habitual traffic offender. *See* section 42-2-203, C.R.S. 1973. The appellant subsequently was charged with Driving After Judgment Prohibited, in violation of section 42-2-206, C.R.S. 1973.

---

[1] The statute uses the term "habitual offender"; we use the term "habitual traffic offender" to avoid confusion with other habitual criminal statutes.

At trial the prosecution presented evidence that on August 11, 1977, the appellant had been operating a motor vehicle within Colorado. The prosecution then introduced an order of revocation dated May 19, 1977, signed by a hearing officer for the DMV, together with testimony that the order remained in effect on August 11, 1977. The order contains a finding that the appellant's record sustains revocation of his driver's license because of his status as an habitual traffic offender, and orders revocation of that license for a period of five years. *See* section 42-2-203 and 205, C.R.S. 1973. The appellant's signature, acknowledging service of the original copy of the order, appears on the face of the order.

On the reverse side of the order appears the following written advisement, signed by McKnight:

"ADVISEMENT OF RIGHTS: I have been advised of the purpose of this hearing and the possible consequences. I understand I am subject to REVOCATION as provided in 42-2-203 C.R.S. 1973 as amended. I also understand that pursuant to 42-2-127 C.R.S. 1973 as amended, I may obtain judicial review of the hearing officer's determination if applied for within thirty days from the date of this hearing."

The advisement contains a notation that "student counsel" and the appellant's wife appeared at the hearing.[2]

McKnight was 67 years of age at the time of the license revocation hearing. He testified that he had driven knowing that his license had been taken away and that he was not supposed to drive. He explained that he considered his conduct necessary in order to obtain medicine for his seriously ailing wife. The appellant further testified that he was hard of hearing; that he could not hear what was going on at the license revocation hearing; that he forgot to bring his glasses to that hearing and could not read the forms; that he simply signed the forms which the hearing officer told him to sign; and that the consequences of habitual offender status, other than loss of his driver's license, were never explained to him. The prosecution, by cross-examination and rebuttal evidence, called into question the illness of the appellant's wife and the need for the appellant to have driven the vehicle.

The jury found McKnight guilty[3] and, in response to a special

---

[2] At the same hearing at which his license was revoked, McKnight's privilege to operate a motor vehicle was suspended for one year pursuant to section 42-2-124, C.R.S. 1973 (1979 Supp.). He signed a written advisement with respect to that proceeding, containing the statement "I have checked my driving record and found it to be correct," verifying that it reflected 31 points within 24 months and acknowledging that such record required suspension under section 42-2-123, C.R.S. 1973. That form reflects that McKnight's wife and the person designated "student counsel" on the back of the revocation order were present at the hearing. Evidence of these matters was also received at the trial.

[3] The jury was instructed that the prosecution must prove beyond a reasonable doubt as an element of the crime that McKnight had driven the motor vehicle "with knowledge that [his] operator's and chauffeur's license have been revoked pursuant to the habitual offender statute."

interrogatory on the verdict form, found that he "did not drive a motor vehicle because of an emergency." The court sentenced the appellant to the state reformatory for an indeterminate term not to exceed five years. McKnight appealed, based upon the denial of motions to dismiss the charge because of several alleged constitutional deficiencies in the habitual traffic offender statute, sections 42-2-201 to 208, C.R.S. 1973.

■ We start with the proposition that the statute is presumed to be constitutional. *E.g., People v. Edmonds,* 195 Colo. 358, 578 P.2d 655 (1978); *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972). The defendant has the burden of proving the statute to be unconstitutional beyond a reasonable doubt. *E.g., People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978); *People v. Gonzales,* 188 Colo. 272, 534 P.2d 626 (1975).

I.

■ The appellant first contends that he has been denied due process of law[4] because of inadequate protections afforded by statute to one charged with Driving After Judgment Prohibited. We do not agree.

■ An habitual traffic offender is defined to include one having, within a seven-year period, three or more convictions of operating a motor vehicle while under the influence of intoxicating liquor. Section 42-2-202, C.R.S. 1973. That portion of the definition was the basis for the DMV's finding that the appellant was an habitual traffic offender.

■ An administrative proceeding to revoke the license of an habitual traffic offender is authorized by section 42-2-203, C.R.S. 1973, which provides:

"42-2-203. *Authority to revoke license of habitual offender.* The department [DMV] has the authority to revoke the license of any person whose record brings him within the definition of an habitual offender in section 42-2-202; except that the hearing procedure, as specified in section 42-2-123(7) to (12) shall be employed prior to any such revocation."

The hearing procedure so specified[5] includes written notice of hearing, hearing, and the right to appeal to the district court from an order of the DMV revoking a driver's license. Section 42-2-123(7) to (12), C.R.S. 1973 (1979 Supp.). Pursuant to such procedures, the appellant was found to be an habitual traffic offender. He did not appeal.

The criminal conviction from which McKnight has appealed is based upon section 42-2-206, C.R.S. 1973, which provides in pertinent part:

---

[4] *U.S. Const.* amend. XIV; *Colo. Const.* art II, § 25.

[5] Sections 42-2-123(7) through (12), C.R.S. 1973 (1979 Supp.), provide for notice to the operator that a hearing will be held concerning the possible revocation of the operator's driver's license. The hearing is held at a DMV district office before an authorized DMV hearing officer. If the record of the operator kept by the DMV reflects a sufficient quantity and type of traffic convictions within a specified time, all as provided by statute, the operator's license must be revoked. *Fuhrer v. Department of Motor Vehicles,* 197 Colo. 325, 592 P.2d 402 (1979). *See* section 42-2-202, 203, C.R.S. 1973.

"42-2-206. *Driving after judgment prohibited.* (1) It is unlawful for any person to operate any motor vehicle in this state while the revocation of the department [DMV] prohibiting the operation remains in effect. Any person found to be an habitual offender, who is thereafter convicted of operating a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, is guilty of a class 5 felony. No portion of such sentence may be suspended, and no probation may be granted; except that, in a case where the defendant establishes that he had to drive the motor vehicle in violation of this subsection (1) because of an emergency, the mandatory prison sentence may not apply."

The appellant does not directly challenge the license revocation procedures in the habitual traffic offender statute to the extent that such procedures divest an habitual traffic offender of his license to drive a motor vehicle. He contends, however, that to use the DMV revocation order as an essential element of the crime of Driving After Judgment Prohibited violates constitutional protections of the accused in that criminal proceeding.

The appellant's argument runs as follows: (1) The key element of the offense of Driving After Judgment Prohibited is the defendant's status as an habitual traffic offender; (2) therefore, the hearing at which a determination is made of the defendant's status as an habitual traffic offender is a critical stage of the criminal proceedings and due process rights apply; and (3) due process requires, at a minimum, the right to assistance of counsel, the right to compulsory attendance of witnesses, and the right to confront adverse witnesses at the license revocation hearing.[6] *See U.S. Const.* amends. VI and XIV; *Colo. Const.* art II, §§ 16 and 25.

A.

The administrative proceeding to revoke a driver's license because of habitual traffic offender status is a civil one. *People v. Able,* 200 Colo. 115, 618 P.2d 1110 (1980). The only immediate consequence of a determination that the licensee is an habitual traffic offender is the loss of his driver's license for a period of five years. Section 42-2-205, C.R.S. 1973. Thus, the constitutional protections afforded criminal defendants need not be provided to the licensee in such a proceeding. The appellant does not question this to the extent that the consequence attaching to habitual traffic offender status is loss of driving privileges, but contends that, because the determination of habitual traffic offender status is so central to a conviction for Driving After Judgment Prohibited, the administrative habitual traffic offender hearing must be considered a critical stage of the criminal case. This contention was considered and rejected in *Ferguson v. Gathright,* 485 F.2d 504 (4th Cir. 1973), *cert. denied* 415 U.S. 933, 94

---

[6] In his motion for new trial, the appellant contends that the right to trial by jury applies, although this is not urged in his briefs. *See Colo. Const.* art. II, § 23.

S.Ct. 1447, 39 L.Ed.2d 491 (1974). In rejecting an analogy to a parole revocation hearing the court said at p. 506:

"There is, though, a fatal flaw in this analogy. At the parole revocation, an adverse finding brings an immediate and automatic loss of liberty. No such result follows from a license revocation. In the latter situation, the defendant loses simply his right to operate a motor vehicle on the public highways; he suffers no loss of liberty or threat of incarceration. He is not substantially different in condition from thousands of others who, for one reason or another have been denied, or have suffered a loss of, a driving permit. He comes under the threat of incarceration *only if* he subsequently determines to take the law into his own hands and to operate a motor vehicle on the public highway without a valid permit.

. . .

"It is his subsequent defiance of the law, and only indirectly his revocation proceedings, that brings into play the criminal processes and places him in peril of imprisonment."

Other cases which have considered this question have reached the same conclusion. *Mays v. Harris,* 523 F.2d 1258 (4th Cir. 1975); *Whorley v. Virginia,* 215 Va. 740, 214 S.E.2d 447 (1975); *see People v. Able, supra.*

■ We conclude that the DMV administrative hearing which results in license revocation pursuant to section 42-2-203, C.R.S. 1973, is not a "critical stage" of the prosecution for Driving After Judgment Prohibited. That hearing, therefore, need not be conducted as a criminal trial. This is true even though the administrative determination is an element of the criminal charge.

### B.

■ If the procedures from which a license revocation results are so lacking in fundamental fairness as to cast doubt on the ability to obtain a fair and accurate determination of habitual traffic offender status, the use of that determination as an element of a criminal offense might well violate due process of law. *See Ferguson v. Gathright, supra.*

■ Revocation of a driver's license does implicate procedural due process protections. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). There can be little doubt that the Colorado procedures, which require notice and administrative hearing in advance of revocation, and which permit appeal of any order of revocation, are fully adequate to accord procedural due process to the licensee. *See Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1974); *see generally Campbell v. Colorado,* 176 Colo. 202, 491 P.2d 1385 (1971).

■ A review of the habitual traffic offender administrative procedures reflects that they are well calculated to produce a fair and accurate result. That conclusion is reinforced by the availability of judicial scrutiny

of the administrative action.

 The only issue to be determined in a license revocation hearing involving an alleged habitual traffic offender is whether the licensee has sustained the requisite number of convictions for specified traffic offenses within the prescribed period of time, all as established by statute. This determination is made by a hearing officer by reference to the licensee's driving record, as reflected in DMV records. *See generally Gillespie v. Director of the Department of Revenue, Motor Vehicles Division,* 41 Colo. App. 561, 592 P.2d 418 (1978). The licensee may point out any alleged mistake in his driver's record at the hearing. He may not relitigate the issue of guilt of the offenses shown on his record. *See Zaba v. Motor Vehicle Division,* 183 Colo. 335, 516 P.2d 634 (1973). The determination as to the licensee's record is not a complex one, so the risk of error is not great. *See Dixon v. Love, supra.* The hearing officer has no discretion as to remedy; if the licensee is found to be an habitual offender, his license must be revoked for a period of five years. *Fuhrer v. Department of Motor Vehicles,* 197 Colo. 325, 592 P.2d 402 (1979).

 If the licensee believes that the hearing officer's decision is erroneous, he may appeal to the district court. Section 42-2-123(11), C.R.S. 1973; *see Gillespie v. Director of the Department of Revenue, Motor Vehicle Division, supra.* Furthermore, if the licensee contends that *any conviction* supporting the administrative order of revocation was obtained in violation of his constitutional rights, he may raise this issue and obtain a full review of his contention by the court in the criminal proceeding under section 42-2-206, C.R.S. 1973. *People v. Heinz,* 197 Colo. 1102, 589 P.2d 931 (1979); *see People v. Able, supra.* He may also assert in the criminal proceeding that a court which entered any conviction supporting his habitual offender status lacked jurisdiction over his person or over the subject matter. *See People v. Able, supra.* Absent a challenge that a conviction supporting the administrative order of revocation was obtained in violation of the defendant's constitutional rights or that the court lacked jurisdiction over the person or the subject matter, no such conviction is subject to collateral attack. *People v. Able, supra.* Thus, all permissible grounds for attacking the underlying convictions may be asserted in the criminal proceeding under section 42-2-206, C.R.S. 1973.

 We conclude that the procedures upon which prosecutions under section 42-2-206, C.R.S. 1973, are based are fundamentally fair, are adequate to assure an accurate determination of habitual traffic offender status, and accord due process of law to a licensee later accused of Driving After Judgment Prohibited. *See Ferguson v. Gathright, supra.*

## II.

The appellant also asserts that the method of establishing his status as an habitual traffic offender fails to accord him constitutional rights to

equal protection of laws.[7]

The foundation for this contention is that other acts providing for enhancement of punishment on the basis of prior convictions afford a defendant notice of the convictions relied upon, a right to jury trial with respect to the existence of the prior convictions, and a right to require the prosecution to prove such convictions beyond a reasonable doubt. *See* sections 16-13-101 to 103, C.R.S. 1973 (1978 Repl. Vol. 8) (1979 Supp.) (the habitual criminal act); and section 42-4-1202(4), C.R.S. 1973 (1979 Supp.) (driving under the influence of intoxicating liquor or narcotic drugs).

The appellant does not assert that the habitual traffic offender statute creates any suspect classification or infringes any fundamental right. Accordingly, the test to be applied to determine whether equal protection standards have been violated is whether the classification is reasonable, not arbitrary, and bears a rational relationship to legitimate state objectives. *Mosgrove v. Town of Federal Heights,* 190 Colo. 1, 543 P.2d 715 (1975), *citing Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Fuhrer v. Department of Motor Vehicles, supra* (summarizing the test as to whether the classification is "without rational basis"). Mathematical precision in establishing classifications is not required. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The habitual criminal act prescribes enhanced punishment for offenders who have been convicted of felony offenses at least twice before the commission of the offense upon which the habitual criminal charge is based. Potential penalties are 25 to 50 years in the state penitentiary for a third-time offender and life imprisonment for one convicted four or more times. Section 42-4-1202(4), C.R.S. 1973 (1979 Supp.), deals with a situation where a repeat offender of driving under the influence of intoxicating liquor or narcotic drugs is subject to enhanced punishment. The potential penalty under both of these statutes follows directly from the conviction, whereas under the habitual traffic offender statute no criminal sanction attaches unless and until the offender elects to operate a motor vehicle notwithstanding an administrative order revoking his driver's license. The matters treated, the immediacy and severity of the penalties, and the public policy considerations are so different that we cannot find the classifications unreasonable or lacking in a rational relationship to legitimate state objectives. *See Mosgrove v. Town of Federal Heights, supra.*

---

[7] *U.S. Const.* amend. XIV; *Colo. Const.* art. II, § 25.

Other aspects of the appellant's argument that he has been deprived of equal protection of the laws have been resolved adversely to him in *People v. Scott,* 200 Colo. 365, 615 P.2d 680 (1980).

### III.

The appellant urges that his rights to due process of law were violated because the DMV failed to insure that he was fully informed of the consequences of driving during the period of revocation as an habitual traffic offender. He argues that due process requires such a warning when the administrative order revoking his license is issued, because of the severity of the penalty involved for operating a motor vehicle while his license is revoked. In *People v. Heinz, supra,* the defendant charged with Driving After Judgment Prohibited attacked one of the convictions upon which his status as an habitual traffic offender had been administratively determined. The basis for his attack was that, at the time he offered a plea of guilty upon which the third conviction was based, he was not advised that his conviction made him subject to enhanced punishment as an habitual traffic offender. What we said there is applicable by analogy here:

"At the time the defendant entered the plea of guilty which brought about his third conviction, the enhanced punishment with which he is now faced was contingent upon his future conduct. The trial judge who accepted that plea was not required to advise defendant of his continuing duty to act as a law abiding citizen. *Russel v. District Court,* 191 Colo. 298, 552 P.2d 297 (1976). We note also that neither the American Law Institute Model Code of Pre-Arraignment Procedure, *see* § 350.4 and comments thereto (1975), the American Bar Association Standards Relating to Pleas of Guilty, 14-1.4 (Approved Draft, 1978), nor the American Bar Association Standards Relating to the Function of the Trial Judge, 6-4.2 (Approved Draft, 1978), require that a defendant be informed of the possible future application of habitual offender laws."

*People v. Heinz,* 197 Colo. 102, _____, 589 P.2d 931, 934 (1979).

 Our constitution does not require an explanation of every consequence of a state-conferred status.[8] The requirements of due process are satisfied by the notice which is given through publication of the statutes. *See Vigil v. Motor Vehicle Division,* 184 Colo. 142, 519 P.2d 332 (1974). A trial court need not advise an accused of the many legal consequences of a guilty plea, particularly those arising from the accused's own future misconduct. *People v. District Court,* 191 Colo. 298, 552 P.2d 297 (1976). The trial court's duty to advise the defendant of the consequences of his plea extends only to those consequences which have "a definite, immediate and largely automatic effect on the range of [a

---

[8] "It is an axiom as old as jurisprudence, that ignorance of the substantive law is no excuse for a violation thereof, and the offender must accept the penalties incurred as a consequence of his transgression." *Kirkendoll v. People,* 138 Colo. 267, 270, 331 P.2d 809, 810 (1958).

defendant's] punishment." *People v. Heinz, supra,* quoting from *Cuthrell v. Director,* 475 F.2d 1364 (4th Cir. 1973). We conclude that constitutional due process standards do not mandate that notice be given to persons adjudged habitual traffic offenders under section 42-2-203, C.R.S. 1973, as to the possible criminal penalty for driving in violation of an administrative order revoking the habitual traffic offender's driver's license.

We also reject the contention that a gratuitous advisement of the consequences of violation of an order revoking a driver's license in one habitual traffic offender proceeding requires such an advisement in all other such proceedings in order to accord equal protection of the law.

## IV.

■ The appellant claims the establishment of Driving After Judgment Prohibited as a class 5 felony with mandatory sentencing violates the prohibition against cruel and unusual punishment. *U.S. Const.* amends. VIII, XIV; *Colo. Const.* art. II, § 20. This contention has been resolved adversely to the appellant in our opinion in *People v. Scott,* 200 Colo. 365, 615 P.2d 680, (1980).

## V.

■ The sentence imposed for violation of section 42-2-206, C.R.S. 1973, may not be suspended and probation may not be granted unless the defendant establishes that he was required to drive because of an "emergency." Section 42-2-206(1), C.R.S. 1973. The appellant argues that the section unconstitutionally shifts the burden of proof to a defendant, is impermissibly vague, and lacks a standard of proof by which to guide a jury in determining whether an emergency has been proven. While we disagree with the first two of these contentions, we find merit in the last as it relates to the instant case.

## A.

■ A defendant has the right to have the state prove every element of an offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972). In the instant case, however, the fact of emergency has no bearing on the establishment of the offense. Its sole significance is in determining whether an otherwise mandatory sentence may be suspended or probation granted. Even if an emergency is established, the court retains the discretion to deny probation and suspension of sentence and to impose any sentence of confinement authorized for a class 5 felony. Thus the penalty range is not automatically revised by establishment of an emergency. Information with respect to an alleged emergency is peculiarly within the knowledge of the defendant. We conclude that to require the defendant to prove emergency does not shift the burden of proof with respect to any fact essential to the offense charged contrary to the dictates of due process of law. *See Patterson v. New York,* 432 U.S. 197, 97

S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Gilbert v. State,* ____Ind. ____, 369 N.Ed.2d 650 (1978); *cf. Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *see generally* Note, *The Constitutionality of Affirmative Defenses After Patterson v. New York,* 78 Colum. L. Rev. 655 (1978).

### B.

 Existence of an emergency does not affect the criminality of the conduct of driving in violation of section 42-2-206, C.R.S. 1973. It does, however, have a substantial effect on the trial court's discretion in sentencing. Acknowledging the importance of the emergency provision, we nevertheless disagree with the appellant's assertion that it is unconstitutionally vague.

 An essential of due process is that a statute state its mandate with reasonable clarity. *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975). The test for vagueness is commonly expressed as whether a statute describes prohibited conduct in terms such that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. *See Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979). In the context of this case we are concerned with whether the meaning of "emergency" is so indefinite that a judge or jury could not objectively determine whether the mandatory sentence provision of 42-2-206, C.R.S. 1973, applies.

 The legislature is not required to define readily comprehensible and everyday terms which it uses in statutes. *People v. Griffith,* 197 Colo. 544, 595 P.2d 231 (1979). Thus, terms such as "possession", "involving", and "force or violence" have been held sufficiently clear in themselves without need of a further statutory definition. *See People v. Griffith, supra; People v. Blue, supra.* Neither is a statute which requires the jury to determine a question of "reasonableness" too vague to afford a practical guide for accepted behavior. *People v. Prante,* 177 Colo. 243, 493 P.2d 1083 (1972). We conclude that "emergency" has a sufficiently well understood common meaning[9] within the context of section 42-2-206, C.R.S. 1973, to be applied by judge or jury[10] without violating due process rights of the defendant.

---

[9] Webster's Seventh New Collegiate Dictionary gives the following definition: "1: an unforeseen combination of circumstances or the resulting state that calls for immediate action 2: a pressing need: EXIGENCY"

[10] In the instant case the defendant requested a jury determination and the prosecution did not object. Although the term "emergency" was not defined for the jury, the record does not reflect that the defendant objected or tendered any proposed instruction defining the term.

## C.

The statute does not specify the standard of proof which the defendant must meet to establish an "emergency". In absence of statutory specification of a different standard, we conclude that the defendant must prove the existence of an emergency by a preponderance of the evidence.

In the instant case the trial judge submitted the question of emergency to the jury but failed to instruct them on the burden of proof which the defendant had to meet. We cannot assume that the jury applied the correct standard.[11] In view of the conflicting evidence the standard for burden of proof could well have controlled the result. We therefore hold that this failure was plain error, requiring that the sentence be vacated and that the case be remanded to the district court for a new hearing on the question of emergency using the proper burden of proof. *See People v. Aragon,* 186 Colo. 91, 525 P.2d 1134 (1974); *People v. Hill,* 182 Colo. 253, 512 P.2d 257 (1973).

Although the statute is not explicit, we construe section 42-2-206, C.R.S. 1973, as requiring the trial judge and not the jury to make the determination regarding the existence of an emergency. This determination should be made at the sentencing hearing and not as a part of the trial on the issue of guilt.

We affirm the judgment of the conviction but vacate the sentence and remand this case to the trial court for further proceedings consistent with the views expressed in this opinion.

JUSTICE LEE does not participate.

---

[11] Because the People had the burden of proving every element of the offense beyond a reasonable doubt, the jury may well have placed that same burden on the defendant to prove emergency.