Adam O. LAWRENCE, an infant, through his mother and next friend, Amy Fritz, Plaintiff–Appellee,

v.

Sharon K. TAYLOR, Defendant–Appellant.

No. 98CA2598.

Colorado Court of Appeals, Div. IV.

July 20, 2000.

The Leventhal Law Firm, P.C., Beth L. Krulewitch, Denver, Colorado, for Plaintiff–Appellee.

Godfrey & Associates, P.C., Brett M. Godfrey, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

In this wrongful death action, defendant, Sharon K. Taylor, appeals the judgment entered on a jury verdict in favor of plaintiff, Adam O. Lawrence. We affirm.

Defendant's vehicle struck a motorcycle operated by plaintiff's father (decedent) causing fatal head injuries. Following the decedent's death, plaintiff filed this action through his mother and next friend, Amy Fritz (mother), alleging that defendant's negligence had caused the death.

Although a first trial resulted in a mistrial, after a second trial, the jury found in favor of plaintiff and awarded him $400,000. The award was reduced to $240,000 because the jury found that the decedent was 40% responsible for the accident.

### I.

The trial court ruled as inadmissible evidence indicating that decedent was not wearing a motorcycle helmet at the time of the collision. Defendant contends that ruling was reversible error. We are not persuaded.

A trial court has considerable discretion in deciding questions concerning the admissibility of evidence. To show an abuse of discretion, a party must establish that, under the circumstances, the court's decision was manifestly arbitrary, unreasonable, or unfair. *Vu v. Fouts*, 924 P.2d 1129 (Colo. App.1996).

Under the law of comparative negligence, evidence of a motorcycle operator's failure to wear a protective helmet is inadmissible to show either negligence or a failure to mitigate damages on the part of the operator. *Dare v. Sobule*, 674 P.2d 960 (Colo.1984).

Here, in granting plaintiff's motion in limine to exclude evidence that decedent was not wearing a helmet, the trial court relied on *Dare v. Sobule, supra.* It found that evidence of decedent's failure to wear a helmet at the time of the accident was irrelevant and inadmissible to establish comparative fault or failure to mitigate damages.

Relying on *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70 (Colo.1998), defendant contends that the mere fact that there exists no statute addressing the use of a helmet does not prevent a fact finder from apportioning fault on this basis. We disagree.

The supreme court in *Bayer* held that, in the absence of clear legislative intent to the contrary, the creation of a statutory remedy does not bar preexisting common law rights of action. It also noted that the Restatement (Second) of Torts explains that a legislative minimum does not prevent a finding that a reasonable person would have taken additional precautions when the situation calls for them. Here, however, there is no statutory enactment regarding the use of motorcycle helmets, and under *Dare v. Sobule, supra,* such evidence is inadmissible.

Defendant also argues that, because non-use of a seat belt is now admissible in civil cases to prove evidence of failure to mitigate pain and suffering, *see* § 42–4–237(7), C.R.S.1999, this change in law reflects a legislative trend toward reduction of a defendant's fault based upon a plaintiff's failure to take reasonable steps to mitigate injury. However, because defendant did not present this argument to the trial court, we do not address it here. *See Flagstaff Enterprises Construction, Inc. v. Snow*, 908 P.2d 1183 (Colo.App.1995).

Thus, we conclude that the trial court did not abuse its discretion in ruling that evidence of the decedent's failure to wear a helmet during the accident was inadmissible.

### II.

Defendant also sought unsuccessfully to present evidence that the decedent was operating a motor vehicle without a valid driver's license. Contending that the court erred in barring that evidence, defendant asserts that the decedent's driver's license had been suspended as a result of repeated and recurrent violations of law which would warrant a finding by the trial court that decedent was an

habitual offender and that the circumstances of the offenses giving rise to the suspension indicated a habit, practice, and pattern of disregard for traffic regulations. We perceive no error.

### A.

■ In a motion in limine, evidence was presented to the court that the decedent had been convicted of reckless driving two times, driving without a license, driving while his license was under restraint, eluding police, and possessing drug paraphernalia while driving.

In granting plaintiff's motion in limine, the trial court found that, because the decedent had not been adjudicated an habitual traffic offender under § 42–4–1713, evidence of his prior traffic convictions or a pattern of reckless driving was inadmissible *per se.* It further found that, although the decedent's driver's license was suspended, such suspension was presumably under §§ 42–2–127 and 42–2–132, C.R.S.1999, and not under § 42–2–206, C.R.S.1999. Thus, the trial court ruled that any mention or testimony that decedent's license was under suspension at the time of the accident was inadmissible.

■ Interpretation of a statute is a question of law, and a reviewing court need not defer to a trial court's interpretation. When interpreting a statute, we attempt to implement the intent of the General Assembly. *Paraguay Place–View Trust v. Gray,* 981 P.2d 681 (Colo.App.1999).

Section 42–4–1713, C.R.S.1999, states that, except as provided in §§ 42–2–201 to 42–2–208, C.R.S.1999, no record of the conviction of any person for any violation of the article concerning traffic regulations is to be admissible as evidence in any court in any civil action.

Sections 42–2–201 to 42–2–208 include the provisions defining who is an habitual offender, authority for revocation, appeals, and other related matters.

The habitual traffic offender statute authorizes the Colorado Department of Revenue, Motor Vehicle Division, to conduct hearings to determine whether a person is an habitual traffic offender and to revoke the driver's

license of an habitual traffic offender. *People v. McKnight,* 200 Colo. 486, 617 P.2d 1178 (Colo.1980).

Accordingly, under § 42–4–1713, evidence of the decedent's traffic convictions was not admissible in this negligence action.

### B.

■ Defendant asserts that, had the decedent survived the accident, he would have been convicted of driving while his license was under suspension and considered to be an habitual offender pursuant to § 42–2–202, C.R.S.1999. Thus, she contends that evidence of the decedent's previous traffic convictions would have been admissible. Such an assertion is highly speculative, and, as such, cannot bring the situation here within the exception provided in § 42–4–1713. Consequently, the evidence was properly excluded.

### C.

■ We also reject defendant's contention that evidence that decedent's license was suspended is separate and distinct from evidence of his driving record and that this fact should have been made known to the jury.

The weight of authority is to the effect that mere lack of a driver's license is not evidence of negligence. *See Knutson v. Nielsen,* 256 Minn. 506, 99 N.W.2d 215 (1959); *Ross v. Scott,* 386 N.W.2d 18 (N.D.1986); *Amdahl v. Sarges,* 405 N.W.2d 638 (S.D. 1987); R.P. Davis, Annotation, *Lack of Proper Automobile Registration or Operator's License as Evidence of Operator's Negligence,* 29 A.L.R.2d 963 (1953); *but see Klanseck v. Anderson Sales & Service, Inc.,* 136 Mich. App. 75, 356 N.W.2d 275 (1984).

*Schneider v. Midtown Motor Co.,* 854 P.2d 1322 (Colo.App.1992), upon which defendant relies, does not compel a different result. In *Schneider,* plaintiff brought a negligent entrustment suit against a car dealership after being injured by an allegedly unlicensed driver, who was driving a car he had purchased ten days before the accident. A division of this court held that a causal link may exist between the dealership's entrusting of a

car to an unlicensed, dangerous motorist and the resulting injury to plaintiff. Here, however, the defendant is seeking to establish negligence by the operator of the motorcycle, not negligent entrustment. Nor has defendant explained how evidence that the decedent was operating a motorcycle without a license is relevant in deciding whether he was negligent at the time of the accident. Thus, *Schneider* is not applicable here.

Therefore, the trial court did not err in prohibiting the admission of evidence that the decedent's license was suspended at the time of the accident.

## III.

Urging that it was clearly relevant to the witness' credibility, defendant next asserts that the trial court erred in refusing to admit evidence that plaintiff's mother, at the time of the accident, was employed as a striptease dancer. We perceive no error.

### A.

▮ The relevancy of impeaching evidence must be clear, must not raise collateral issues, and must be directed only at the witness' credibility, and not at the witness' moral character. *People v. Diaz*, 644 P.2d 71 (Colo.App.1981)(evidence as to defendant's previous sexual conduct was irrelevant to offense charged or plea of self defense).

Here, the trial court initially found that, because plaintiff had made a claim for economic loss, mother's occupation as a professional dancer was a relevant consideration. The trial court, however, later reversed its ruling and excluded any evidence concerning the nature of her occupation.

▮ In our view, defendant's attempt to inform the jury of mother's occupation served no useful purpose, but rather was intended to impugn her moral character, and the trial court properly excluded any evidence related to the nature of her occupation. *See People v. Couch*, 179 Colo. 324, 500 P.2d 967 (1972)(inquiry ought to be directed to the witness' credibility, rather than to his moral character). Further, any possible relevance of this evidence was outweighed by its prejudicial effect. *See People v. Diaz, supra.*

### B.

▮ We similarly reject defendant's contention that mother's occupation was relevant to the issue of paternity and the calculation of damages.

▮ Defendant failed to offer any evidence that mother's occupation was relevant to the issue of paternity, and the trial court properly excluded this evidence as an attempt to discredit her moral character. For similar reasons, any evidence concerning plaintiff's relationship with another father figure was irrelevant to the calculation of damages.

### C.

▮ We also disagree with defendant's contention that mother's occupation was relevant to testimony of economic loss by plaintiff's economic expert.

The court allowed expert testimony regarding the amount of mother's income and that testimony did not indicate that determination of plaintiff's financial loss depended on consideration of mother's occupation.

Thus, mother's occupation was irrelevant to plaintiff's economic loss.

## IV.

▮ We also are not persuaded by defendant's contention that the trial court erred in determining, as a matter of law, that the decedent was the natural father of plaintiff.

▮ A motion for a directed verdict may be granted only where the evidence, when so considered, compels the conclusion that the minds of reasonable persons could not be in disagreement and that no evidence, or legitimate inference arising therefrom, has been presented upon which the jury's verdict against the moving party could be sustained. *Boryla v. Pash*, 960 P.2d 123 (Colo.1998).

In relevant part, § 19–4–105(1)(a), C.R.S. 1999, provides that a man is presumed to be the natural father of a child if:

He and the child's natural mother are or have been married to each other and the

child is born during the marriage, within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity of marriage, dissolution of marriage, or divorce, or after a decree of legal separation is entered by a court.

However, the statute also provides that a man is presumed to be the natural father if:

While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child....

Section 19–4–105(1)(d), C.R.S.1999.

Section 19–4–105(2)(a), C.R.S.1999, provides in pertinent part that:

A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls.

Here, according to the testimony presented by mother at the first trial, decedent was the only man in her life. When asked about the last time she had seen another man other than decedent, mother stated, "Since my ex-husband, a year, longer." Evidence also was presented that mother had filed for a legal separation from her husband in 1991, that she had moved with her daughter to Florida where she met decedent in 1992, that she and the decedent had moved to Colorado, and that plaintiff was born in 1993.

In the first trial, the decedent's brother also testified that plaintiff lived with the decedent and mother, that plaintiff was decedent's only biological child, that he was "a proud dad," and that when plaintiff was born, the decedent handed out cigars.

In directing a verdict on the issue of paternity at the first trial, the trial court acknowledged that a husband is presumed to be the father of a child born into a marriage. However, the court essentially determined that a jury could not, by clear and convincing evidence, conclude that the presumption in support of decedent being plaintiff's father had been overcome.

At the second trial, mother again testified that plaintiff was the decedent's child, and that decedent watched plaintiff while she worked, changed his diapers, made bottles, bathed him, and put him to bed. Plaintiff also called the decedent "da-da."

During the second trial, defendant did not renew her objection or seek reconsideration of the paternity ruling.

Consequently, because defendant did not introduce any evidence that decedent was not plaintiff's father, other than the fact that the mother was still legally married to someone else, we conclude that the trial court did not err in directing a verdict on the issue of paternity.

## V.

■ Defendant contends that the trial court erred in permitting plaintiff's counsel to remark during closing argument that her expert had not been called to testify, in view of the fact that a stipulation was approved by the court and entered in the record to the effect that no remarks could be made concerning the absence of defendant's expert witness. We disagree.

At the first trial, defendant called an expert witness to provide testimony related to the reconstruction of the accident.

During opening statement in the second trial, plaintiff's counsel stated that defendant's expert witness was going to testify there was considerable conflicting information in the witness accounts regarding the color of the traffic lights. However, according to plaintiff's counsel, under either scenario, the expert was going to testify that the prudent maneuver on the part of defendant would have been to initiate the left turn in a slow and cautious manner until she was sure there were no north-westbound vehicles proceeding through the intersection. Nevertheless, plaintiff objected to the expert being called during the second trial.

Although defense counsel agreed not to call the expert, and the court ruled that the expert's evidence would not be mentioned, defense counsel stated in closing argument:

Now, let's look at what happened in this situation. [Plaintiff's Counsel] makes much of the fact that I had planned to

bring in an engineer and I didn't call him. And, ladies and gentlemen, the reason I didn't call him is because no engineer in the world can make this light green....

Plaintiff's counsel in closing responded by explaining why he had not called an expert.

We conclude that, because defense counsel attempted to explain to the jury why he did not call the expert, plaintiff's response was reasonable. Consequently, we perceive no error. *See Halliburton v. Public Service Co.,* 804 P.2d 213 (Colo.App.1990)(when a defendant opens the door on a subject by its argument, it is permissible for plaintiff's counsel to respond).

## VI.

Finally, defendant contends that the trial court erred in denying her motion for a directed verdict at the close of the evidence. He alleges that every witness purporting to have firsthand knowledge concerning the color of the traffic light controlling decedent's direction of travel, prior to the time he entered the intersection, testified that such light was red. We are not persuaded.

When the facts are in dispute, it is for the jury, and not the judge, to resolve the conflict. In reviewing a motion for a directed verdict, a court must consider all of the facts in the light most favorable to the nonmoving party, and determine whether a reasonable jury could have found in favor of the nonmoving party. *Boryla v. Pash, supra.*

Here, two witnesses testified that when decedent entered the intersection, the light facing him was red. However, the police officer who responded to the scene testified that none of the six witnesses identified in his report informed him that the decedent had run a red light, that defendant had turned left in front of the decedent, and that the model traffic code requires a driver of a vehicle intending to turn left at an intersection to yield the right-of-way to any vehicle approaching from the opposite direction. The officer further testified, without objection, that one witness had reported that decedent was approaching a green light at the time of the accident and the defendant had caused the accident.

In light of the conflicting evidence, we conclude that the trial court properly denied defendant's motion for a directed verdict.

Accordingly, the judgment is affirmed.

Judge ROTHENBERG and Judge DAILEY concur.